ST. LOUIS BASKET & BOX CO. *v.* LAUDERDALE COUNTY *et al.*

(*Jackson.* April Term, 1922.)

1. **TAXATION.** Payment of tax after tax book becomes process is not voluntary.

Under Acts 1907, chapter 602, the tax book is process equivalent to an execution after the tax becomes delinquent by the expiration of the time allowed by Pub. Acts 1921, chapter 20, for the payment of taxes for that year, and a payment of such taxes under protest after that date was not voluntary, but was made under duress, since the personal property could be seized immediately and the real property within a short time, and in the meantime the tax-payer could have been subjected to interest and penalties if unsuccessful in his attack on the tax. (*Post, pp.* 415-417.)

Acts cited and construed: Acts 1921, ch. 20; Acts 1907, ch. 602.

Cases cited and approved: Bank v. Memphis, 116 Tenn., 641; Railroad v. Hamilton Co., 120 Tenn., 1; Bright v. Halloman, 75 Tenn., 309; Powder Co. v. Goodloe, 131 Tenn., 490.

Cases cited and distinguished: Bright v. Halloman, 75 Tenn., 309; Railroad v. Marion Co., 120 Tenn., 347.

2. **TAXATION.** Statute requiring notice before equalization board increased assessment is mandatory.

The provision of Acts 1907, chapter 602, section 32, that no assessment shall be increased by the county board of equalization until the property owner has been notified and given an opportunity to be heard is mandatory, and an increase of assessment made without such notice is void. (*Post, pp.* 417, 418.)

Acts cited and construed: Acts 1907, sec. 32, ch. 602.

3. **TAXATION.** Legislature could authorize equalization board to increase assessment without special notice.

Basket & Box Co. v. Lauderdale Co.

The legislature might give a board of equalization power to raise assessments without notice to the persons affected other than the notice with which they are charged by the statute fixing the time for the meeting of such boards and defining their duties. (*Post*, *p.* 418.)

Case cited and approved: Brite v. Grubbs, 144 Tenn., 647.

### FROM LAUDERDALE.

Appeal from the Chancery Court of Lauderdale County. —HON. V. H. HOLMES, Chancellor.

CRAIG, BULLOCK & DURHAM, for appellants.

J. W. WATKINS, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit is brought to recover taxes alleged to have been illegally exacted from the complainant and paid under protest. A demurrer was filed and overruled by the chancellor, and the defendants have appealed.

The complainant avers that it was the owner of timber lands and stumpage in Lauderdale county which for the year 1920 were assessed by the tax assessor at $38,200. It is averred that this was a just and fair assessment, but when the county board of equalization met in June it raised this assessment to $91,000. Complainant states that it did not learn of this increased assessment until December 10, 1920, that same was made by the board of equalization without notice to complainant, and for that, and other reasons, is illegal. Complainant charges that it paid its

state and county taxes upon this increased assessment under duress and under protest, and the bill is filed to recover the difference between the amount paid and the amount that would have been due on the assessment returned by the tax assessor.

A number of questions are raised by the bill and demurrer, but in this court it is conceded that only two of these questions need be determined.

The defendants insist first that the payment made by the complainant was voluntary, not under compulsion, and therefore complainant is entitled to no recovery.

By an act of the legislature, chapter 20 of the Acts of 1921, the time in which taxes might be paid without penalty was extended from March 1, to May 1, for that year. After May 1, 1921, taxes for the preceding year became delinquent as ordinarily they became delinquent each year on March 1st. The complainant procured the county authorities to correct a mistake about its acreage and paid its taxes for 1920 on May 9, 1921; its tax receipt containing a recital by the trustee that the payment was under protest.

By the provisions of chapter 602, Acts of 1907, under which this assessment was made, the tax book is process equivalent to an execution after March 1 of each year. As to 1920 taxes, the tax book became such process after May 1, 1921. So when this payment was made by the complainant, it stood in the attitude of a debtor to the State and county against whom judgment had been rendered and an execution had been issued.

Under such circumstances, this court formerly held that payment made was compulsory payment.

"It is insisted the plaintiff ought not to have recovered because his payment was voluntary. We do not assent to this contention. The tax book was process equivalent to an execution in the hands of the officer, and payment under protest, entitled the party to sue for so much as was deemed illegal." *Bright* v. *Halloman,* 7 Lea, 309.

This case has been cited and approved in *Bank* v. *Memphis,* 116 Tenn., 641, 94 S. W., 606, and other cases.

In *Railroad* v. *Hamilton County,* 120 Tenn., 1, 113 S. W., 361, and in *Railroad* v. *Marion County,* 120 Tenn., 347, 108 S. W., 1058, taxes were paid under protest prior to March 1. Certain language used in these cases is relied on here by defendants, but nothing more was decided in either case than that taxes paid before they became delinquent were not paid under duress and could not be recovered.

*Bright* v. *Halloman,* 7 Lea, 309, was referred to in both these cases and distinguished, not in any way modified. Neither *Railroad* v. *Hamilton County* nor *Railroad* v. *Marion County* dealt with the payment of delinquent taxes.

In *Railroad* v. *Marion County,* the following statement is made:

"Before we can hold a payment of taxes involuntary, it must appear that the officer had in his hands process authorizing the seizure of the person or property of the taxpayer, that such seizure of one or the other was imminent, and that there were no other legal means of protecting the person or property than by payment. Under such circumstances payment under protest will save the rights of the taxpayer to recover if the tax should be illegal. Mere protest is not sufficient. Mere unwillingness to pay is not sufficient."

Basket & Box Co. v. Lauderdale Co.

We know of no way in which the property of this tax-payer could have escaped seizure at the time it made payment. There was process in the hands of the tax officers authorizing the seizure of its property. We think seizure was imminent in the sense of the law. Its personalty was liable to seizure immediately. Under the act of 1921 the real estate would have been seized August 1. The only effect of further delay on the part of this taxpayer would have been to subject it to accruing penalties, interest, and costs in case it was unsuccessful in its litigation with the state and county.

We think under the great weight of authority the payment of taxes here involved must be considered as a payment under duress. 37 Cyc. 1182. See, also, *Powder Co.* v. *Goodloe,* 131 Tenn., 490, 175 S. W., 547, and authorities cited, indicating a broader perception of duress.

We are of opinion that the increased assessment of the complainant's property was not lawfully made by the county board of equalization.

Section 32, chapter 602, Acts of 1907, provides for the organization and prescribes the duties and the mode of procedure of such boards. The statute gives these boards authority to equalize taxes, to lower assessments, and to raise assessments. With respect to raising assessments the statute contains this unequivocal direction:

"Provided, that no assessment shall be increased by the county board of equalizers until the property owner or owners affected by said increase shall have been notified and given an opportunity to be heard."

We regard this provision quoted as mandatory, and we think that it cannot be ignored by the county boards of

146 Tenn.—27

equalization nor by the courts. It is certainly sound in policy.

It is quite true that notice might have been dispensed with and a public statute might have given the boards of equalization power to raise assessments without notice to the persons affected, other than the notice with which they are charged by the act of the legislature fixing the time for the meeting of such boards of equalization and defining their duties. *Brite* v. *Grubbs,* 144 Tenn., 647, 234 S. W., 759.

When the statute, however, requires a notice to the property owner prior to an increase in his assessment by a board of equalization, there is no justification for dispensing with such notice, and such a requirement should be enforced. 37 Cyc., 1182.

We conclude, therefore, for the reasons indicated, that the chancellor properly overruled the demurrer, and his decree will be affirmed and this cause remanded for further proceedings.

The costs of this court will be divided between Lauderdale county and the State,