## PUCKETT *v.* SPRINGFIELD.

*(Knoxville.* September 23, 1896.)

1. WAIVER. *Of demurrer and motion to strike out replication.*

Demurrer to a plea and motion to strike out a replication inter-
posed in the County Court, and there overruled, upon which no
action is invoked or taken after appeal to the Circuit Court,
will be treated as waived and abandoned on appeal from the
Circuit Court to this Court. (*Post, p. 268.*)

2. ELECTIONS. *Contesting Justice's election.*

The returns in elections for Justice of the Peace cannot, under
the statutes regulating such elections, be legally compared
until the Monday succeeding the election, and the contestant
has the whole of that day to file notice of contest with the
Sheriff, and his rights cannot be affected or defeated by the
premature and unlawful act of the Sheriff in mailing such re-
turns to the Governor early on that day. (*Post, pp. 268–271.*)

Code construed: §§ 1283, 1295, 1315, 1316, 1317 (S.); §§ 1072, 1084,
1104, 1105, 1106 (M. & V.); §§ 864, 875, 895, 896, 897 (T. & S.).

Cases cited: *Ex parte Cross*, 16 Lea, 486; Gallagher *v.* Moore, 12
Heis., 260.

3. SAME. *Same. Repeal of Act of* 1835.

Acts 1835, Ch. 1, Sec. 12, providing that returns in elections for
Justice of the Peace should be made immediately after the
election, not having been carried into the Code of 1858, stands
repealed. (*Post, p. 272.*)

Code construed: § 58 (S.); § 42 (M. & V.); § 41 (T. & S.).

Cases cited and approved: State *v.* Smith, 3 Heis., 467; Bledsoe
*v.* Stokes, 1 Bax., 312.

4. SAME. *Place of comparing returns of Justice's election.*

That the Sheriff compared the polls of an election for Justice of
the Peace at the county jail instead of at the courthouse, as

Puckett *v.* Springfield.

required by Code, § 1072 (M. & V.), does not vitiate the returns, in the absence of fraud and misconduct. (*Post, pp. 272, 273.*)

Code construed: § 1283 (S.); § 1072 (M. & V.); § 864 (T. & S.).

Case cited and approved: McGraw *v.* Harralson, 4 Cold., 44.

## FROM HAMILTON.

Appeal from Circuit Court of Hamilton County. JOHN A. MOON, J.

RICHMOND, CHAMBERS & HEAD for Puckett.

THOMAS & ELDER and SHEPHERD & FRIERSON for Springfield.

McALISTER, J. This record presents a contest over the office of Justice of the Peace for the First Civil District of Hamilton County. The successful candidates, on the face of the returns, were H. J. Springfield and E. T. Hixon. The election occurred on Thursday, August 2, 1894, and, on the following Monday, August 6, complainant, Puckett, gave notice to the Sheriff of his intention to contest said election, and requested him to withhold the returns until the contest should be decided. This notice, it appears, was served upon the Sheriff about noon of Monday, August 6, succeeding the election, but, at an earlier hour of said day, probably between eight and nine o'clock, the Sheriff had mailed to the Sec-

retary of State all the returns of said election for
Justice of the Peace, including the returns in con-
troversy. It should have been remarked that no-
tices of contest were also served upon the success-
ful candidates. At the ensuing term of the County
Court, contestant, Puckett, filed his declaration, set-
ting forth in detail the grounds of his contest. De-
fendant, Hixon, filed an answer, in which he claimed
to have been duly elected and qualified, and deny-
ing specially all the grounds of the complaint.
At the same term, defendant, Springfield, filed a plea
to the jurisdiction of the County Court, "averring
that the returns of said election had been duly and
regularly made prior to the commencement of this
contest and notice thereof to the Sheriff, and that,
in pursuance of said returns, he had been duly com-
missioned, qualified, and was in the discharge of
the functions of his office "—all of which he pleaded
as an absolute bar to this suit and to the jurisdic-
tion of the County Court. A demurrer to this plea
was interposed by the contestant, assigning two causes,
to wit: (1) Because the plea did not admit or deny
that notice of contest had been given in the time
and mode required by law; (2) because it did not
allege that the returns had reached the Governor or
the commission had issued before notice given. This
demurrer was overruled by the County Judge, and
will not be further noticed, since it was not called
up in any of the subsequent proceedings in the Cir-
cuit Court.

Upon the overruling of the demurrer, the contestant filed two replications to the plea, to wit: (1) Denying that the returns had been made before notice given, and denying that commission had issued and that Springfield had duly qualified. (2) Averring that notice of contest was served upon the Sheriff at 11:45 A.M. on Monday, August 6; that the Sheriff claimed to have then already mailed the returns; that no train left Chattanooga until 1:35 P.M. of that day; that said returns were still within the power and control of the Sheriff; that it was easy for said Sheriff to procure, and it was his duty to procure, said returns and withhold them until the contest was decided, but that he failed and refused to do so, and willfully and intentionally acted with a view of aiding and abetting said Springfield in all he did to avoid and thwart the effect of the notice and contest, which was anticipated by said Sheriff and Springfield, wherefore what was done was illegal and not binding. On motion of counsel for Springfield, this second replication was stricken out as insufficient in law. The cause was finally heard by the Quarterly County Court at its July term, 1895, said Court adjudging that it had jurisdiction of the cause and overruling defendant's plea. The Court thereupon decided that contestant was entitled to the office, and defendant, Springfield, appealed to the Circuit Court. A jury was demanded and granted by the Circuit Judge. October, 1895, the cause was heard by Judge Moon and a jury upon the plea to

the jurisdiction of the Court, which resulted in a verdict and judgment in favor of the defendant, Springfield. The contestant, Puckett, appealed to this Court and has assigned errors.

The first assignment is that it was error to over-rule contestant's demurrer to contestee's plea to the jurisdiction, for the reason that said plea does not present a full and sufficient answer to the declara-tion. It suffices to state, in respect of this assign-ment, that the demurrer was not overruled by the Circuit Court. As already stated, the demurrer was overruled by the County Court, and it was never presented to the Circuit Court or any ruling of that Court asked upon it. It must, therefore, be treated as waived or abandoned.

The second assignment is that the Court erred in striking out contestant's second replication to defend-ant Springfield's plea. This assignment is not well taken for the reason already stated in respect of the demurrer. The second replication to the plea was stricken out by the County Court, and the matter was not afterward called to the attention of the Circuit Court or any ruling made upon it by that Court.

The next assignment of error arises upon the charge of the Court. The Court instructed the jury, viz.: "If you are satisfied from a preponderance of proof that the Sheriff made returns to the Governor of the election from the First Civil District before he had received notice of· this contest, and thereafter a com-mission was regularly issued and was received by

Mr. Springfield, and that he thereafter qualified as
Justice of the Peace, then, in a case of this charac-
ter and under the particular issue in this case, the
defendant would be entitled to your verdict. In a
contest over an election of Justice of the Peace in
a case like this, it is not necessary for the proof to
satisfy you that the Sheriff actually and technically
compared the returns at the courthouse of the county,
and on the Monday following the election. It would
be sufficient in a case of this sort for the Sheriff to
begin comparing the votes of the Justice of the Peace
immediately after the election, and if he should in a
regular way make comparison of such returns prior
to Monday following the election, then in such a case
he might properly forward those returns on such
Monday or even prior to such Monday. Of course,"
continues the Court, "this would not be the case if
the proof were to show that by reason of fraud or
other improper motive on the part of the Sheriff, the
returns were compared elsewhere than at the court-
house," etc. The assignment is that it was error in
the Circuit Judge to charge the jury that the returns
of said election could rightfully and legally be mailed
by the Sheriff immediately after said election and
before the first Monday thereafter, and, in this con-
nection, it is assigned as error that the Circuit Judge
refused to charge as follows:

"The Sheriff, Mr. Skillern, was required by law
to compare the polls at the courthouse on Monday
after the election occurring on Thursday, and deliver

his certificate thereafter and make returns of said election within three days after comparing the polls.''

We are of opinion that, in the instructions given and in refusing the request submitted by counsel for contestant, the Circuit Judge was in error. The error committed is made apparent in the light of the following provisions of positive statute governing this subject:

Section 1104 (M. & V.), Code, provides, viz.: ''Any candidate for Justice of the Peace intending to contest the election, shall notify the Sheriff of his intention, and the Sheriff shall withhold the returns in that case from the Governor until the contest is decided.''

Section 1105 provides, viz.: '' The contestant shall give ten days' notice to the opposing candidates that it is his intention to contest the election.''

Section 1106: '' The County Court shall hear and decide the contest.''

Section 1084 provides, viz.: ''In all cases in which the persons elected by the vote of a single county or fraction of a county are commissioned by the Governor, the returning officer in such county shall make return of such election to the Secretary of State by mail, to be deposited in the post office within three days after comparing the polls.'' Justices of the Peace are commissioned by the Governor and are elected by the vote of a fractional part of the county, hence this provision is directly applicable to such officers.

It will be observed that the last section provides that the returns shall be made within three days after comparing the polls. In § 1072 (M. & V.) Code, the time for comparing the polls is prescribed. That section provides, viz.: "The officer or person holding any election of county officer, shall compare the polls at the courthouse on the first Monday after said election," etc. A Justice of the Peace is a county officer. *Cross, Ex parte,* 16 Lea, 486. We think it is perfectly clear, from these provisions of the Code, that the returns in elections for Justice of the Peace are to be compared at the courthouse on Monday succeeding the election, and that any county officer desiring to make a contest, is entitled to the whole of that day and until the returns are forwarded to the Secretary of State, to give notice of such contest to the Sheriff. The statute was intended to furnish a remedy for such contests and to afford the contestant a reasonable opportunity to investigate the returns, ascertain the result, and give notice of contest before the returns should be forwarded to the Secretary of State, and a commission issued by the Governor. The law has not left this matter to the arbitrary discretion of the Sheriff or other returning officer, but has prescribed his duties, in respect to comparing the polls and making returns of election, in plain and unambiguous language. The wisdom and policy of the law is very obvious when we consider that § 1104 *et seq.* (M. & V.) Code, makes provision only for a contest that is to be com-

menced before the returns are made to the Governor, and for a contest that cannot be commenced after the candidate claiming to have been elected has been inducted into office by being commissioned and qualified. *Gallagher* v. *Moore*, 12 Heis., 260.

We are, therefore, of opinion that under these sections the polls could not legally have been compared until Monday succeeding the election, and that the contestant was entitled to the whole of that day to file notice of contest with the Sheriff, and this right could not be defeated by the action of the Sheriff in mailing and forwarding the returns early Monday morning. As opposed to this construction and as sustaining the charge of the Circuit Judge, counsel for contestee relies upon Sec. 12, Chap. 1, Acts 1835, which provides, viz.: "That the Sheriff of the respective counties aforesaid shall, immediately after the election, make out a certificate of said election, showing who are elected Justices of the Peace in the respective districts of the county, and shall forward same to the Governor, who shall issue a commission to the Justice or Justices of the Peace."

It suffices to say that this section of the Act of 1835 was not brought forward in the Code of 1858, and is, therefore, repealed. M. & V. Code, § 42; *State* v. *Smith*, 3 Heis., 467; *Bledsoe* v. *Stokes*, 1 Bax., 312, 314.

The fourth assignment is that it was error in the Circuit Judge to charge the jury that it was immaterial whether the polls were or were not compared

at the courthouse and to refuse to charge, as requested by the contestant, that the Sheriff was required by law to compare the polls at the courthouse. It appears from the proof in this record that the Sheriff compared the polls at the county jail, where he resided and transacted much of his official business. In absence of all fraud and misconduct in comparing the polls and counting the votes, this fact would not be sufficient to vitiate the returns, but the safe course is to pursue strictly the requirements of the statute. *McGraw* v. *Harralson*, 4 Cold., 44.

For the errors in the charge the judgment is reversed and the cause remanded.